1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   NASCENT WINE COMPANY, INC.; and            CASE NO. 10cv1349 JM(BGS)
     INTERNATIONAL FOOD SERVICE
12   SPECIALISTS, INC.,                          ORDER GRANTING MOTION TO
                                                  DISMISS FOR IMPROPER VENUE
13                              Plaintiffs,
             vs.
14
     PASANI, S.A. DE C.V.; ECO PAK
15   DISTRIBUTING, LLC; ONE SEVEN
     PROPS, INC.; ALEJANDRO GUTIERREZ
16   PEDERZINI; and LETICIA GUTIERREZ
     PEDERZINI,
17
                                Defendants.
18          Defendants Pasani, S.A. de C.V.; Eco Pak Distributing, LLC; One Seven Props, Inc.;

19   Alejandro Gutierrez Pederzini; and Leticia Gutierrez Pederzini move to dismiss this action for

20   improper venue pursuant to Fed.R.Civ.P. 12(b)(3) based upon a contractual forum selection provision

21   or, alternatively, to dismiss for lack of personal jurisdiction or for a convenience venue transfer to the

22   District Court for the Western District of Texas.  Plaintiffs Nascent Wine Company, Inc. and

23   International Food Service Specialists, Inc. oppose all motions.  Pursuant to Local Rule 7.1(d)(1), this

24   matter is appropriate for decision without oral argument.  For the reasons set forth below, the court

25   grants the motion to dismiss for improper venue and denies the remainder of the motions as moot.

26                                      **BACKGROUND**

27          On June 25, 2010, Plaintiffs commenced this diversity action alleging claims for breach of

28   contract, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, unjust

                                            - 1 -                                    10cv1349

1    enrichment, conversion and specific performance.  (Ct. Dkt. 1).  Plaintiffs' claims arise from a series

2    of agreements entered into between the parties from May 2007 through June 30, 2008, the date that

3    the parties entered into a Settlement Agreement ("SA"), purportedly to resolve all disputes amongst

4    the parties.  (First Amended Complaint, "FAC" ¶23, Def. Exh. 1).  The SA contains a forum selection

5    and choice of law provision:

6        **3.3 Choice of Law.**   For all related to the interpretation, fulfillment, validity,
         controversy and/or execution of the present agreement, the parties submit to the laws
7        and jurisdiction of the courts of Mexico, Distrito Federal expressly waiving any other
         jurisdiction which may now or in the future be entitled for any reason.
8

9    (Def. Exh.1, ¶3.3).  In broad brush, Plaintiffs allege "Defendants never intended to fully perform the

10   acquisition transaction of the Settlement."  (FAC ¶25).

11   **Parties to the Action**

12       Nascent Wine Company, Inc. ("Nascent"), and its wholly-owned subsidiary, International

13   Food Service Specialists, Inc. ("IFSS"), are Nevada corporations with their principal places of

14   business located in San Diego, California.  (FAC ¶¶1, 2).  Defendant Pasani S.A. de C.V. ("Pasani"),

15   a corporation organized under the laws of Mexico with corporate headquarters located in San Diego

16   and San Antonio, Texas, is in the business of buying consumer goods in the United States and

17   distributing and selling them in Mexico.  (FAC ¶3).  Nascent, a distributor of food and wine products,

18   had sold goods to Pasani who, in turn, imported them for distribution and sales into Mexico.  (FAC

19   ¶11).  Defendant Eco Pak Distributing LLC ("Eco Pak") is a Texas limited liability company with

20   corporate headquarters in San Diego, California, is also in the business of purchasing consumer goods

21   in the United States and distributing and selling them in Mexico.  (FAC ¶4).  Defendant One Seven

22   Props, Inc. ("One Seven"), incorporated and maintaining its principal place of business in Texas, is

23   wholly owned by Defendant Mr. Pederzini. One Seven owns the trademarks used by Eco Park and

24   Pasani in connection with the importation, distribution and sale of consumer products.  (FAC ¶5).

25       Plaintiffs allege that Mr. Pederzini is a resident of San Antonio, Texas and Ms. Pederzini a

26   resident of Mexico.  Plaintiffs allege that, at all relevant times, the Defendants Pederzini were the

27   controlling officers and directors of Eco Pak and Pasani.  (FAC ¶¶ 5-7).  The Pederzini Defendants

28   are the alleged alter egos of the corporate entities, Pasani and Eco Pak, and "exercise such dominion

1   and control over [the corporate entities and share] such a unity of interest with them that the

2   separateness of the business entities do not in reality exist."  (FAC ¶8).

3   **The Agreements**

4         In May 2007 Nascent agreed to purchase Pasani and Eco Park in order to expand its brands

5   and operations in Mexico.  After six months of negotiations, on May 10, 2007 the parties executed

6   several agreements, including a Stock Purchase Agreement ("SPA").  (Def. Exh. 2).  The agreement

7   contains choice of law and forum selection provisions identifying the applicability of Mexican law

8   to any dispute and designating Mexico City as the exclusive forum for resolving any dispute.  On the

9   same day, the parties also executed a Pledge on Shares Agreement ("PSA") in order to transfer

10  ownership interests from Pasani to Nascent in exchange for a promissory note to be executed by

11  Nascent.  This agreement also contains the same choice of law and forum selection provisions, (Def.

12  Exh. 3).   On the same day, Nascent executed a promissory note for $1.5 million, payable to

13  Defendants Pederzinis.  The note identifies both Texas and Mexico as appropriate forums for

14  resolving any dispute. (Def. Exh. 4).  In connection with the SPA, Nascent and Eco Pak entered into

15  a Membership Interest Purchase Agreement ("MIPA") whereby Nascent purchased all issued and

16  outstanding stock for $100,000.  The MIPA does not contain any choice of law or forum selection

17  provision.

18        Three other agreements are pertinent to the parties' contractual relationship. On May 11, 2007

19  Nascent and One Seven entered into a Trademark License and Purchase Agreement ("TLPA")

20  whereby Nascent would acquire use of Pasani's trademarks in Mexico.  This agreement does not

21  contain either a choice of law or forum selection provision.  In connection with the SPA, on May 17,

22  2007 Nascent and Mr. Pederzini entered into an Employment Agreement ("EA") to define the

23  conditions of employment during the transitional period in which Nascent intended to completely take

24  over Pasani's operations in Mexico.  This agreement contains a choice of law provision identifying

25  the applicability of the laws of the State of California and a forum selection provision compelling the

26  parties to arbitrate any and all disputes before the American Arbitration Association in San Diego.

27  (FAC, Exh. D ¶21.00).

28        The final agreement at issue is the SA, executed on June 30, 2008.  "Defendants proposed

1    unwinding the entire transaction by paying back over time a portion of the funds to Plaintiffs in return

2    for" the Pederzinis reacquisition of ownership of Eco Pak and Pasani.   The SA required Pasani to

3    initially repay $997,451 in working capital and $113,888 for inventory which Plaintiffs had

4    contributed to Pasani. (FAC ¶23).  Plaintiffs, as a part of the settlement, agreed to sign over their

5    ownership interests in the corporate entities to the Pederzinis.  The SA contains choice of law and

6    forum selection provisions identifying the applicability of Mexican law to any dispute amongst the

7    parties and designating Mexico City as the exclusive forum to resolve any dispute.  The Pederzini

8    Defendants made the initial payment of $120,000 and Plaintiffs transferred ownership of Pasani and

9    Eco Pak back to the Pederzinis.  The Pederzinis thereafter failed to make any further payments as

10   contemplated by the SA.

11         Plaintiffs generally allege that "Defendants never intended to perform any of the terms of the"

12   SA beyond the initial exchange. (FAC ¶25).  Plaintiffs further allege that defendants "intended to and

13   did take approximately $3,500,000 USD from Plaintiffs for essentially nothing." Id.

14                                        **DISCUSSION**

15   **Legal Standards**

16         A Rule 12(b)(3) motion to dismiss is the appropriate procedural vehicle to challenge improper

17   venue pursuant to a forum selection provision. Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324

18   (9th Cir. 1996).  In ruling on the motion, the court may consider facts outside the pleadings and need

19   not accept the complaint's allegations as true. Id. The court must also draw all reasonable inferences

20   and resolve all factual conflicts in favor of the party seeking to avoid enforcement of the provision.

21   Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1139 (9th Cir. 2004).  In the event genuine issues of

22   material fact prevent granting the motion to dismiss, the court may stay the Rule 12(b)(3) motion,

23   conduct an evidentiary hearing pursuant to Rule 12(i), and then weigh the facts, assess credibility and

24   make the factual findings necessary to resolve the Rule 12(b)(3) motion. Id.

25   **The Rule 12(b)(3) Motion**

26         Federal law governs the validity of a forum selection clause. Argueta, 87 F.3d at 824; The

27   Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972). In Bremen the Supreme Court held that forum

28   selection provisions are presumptively valid and should not be set aside "absent some compelling and

1    countervailing reason." Id. at 12.  A forum selection clause is unreasonable and not enforceable where

2    (1) its incorporation into the contract was the result of fraud, undue influence, or overwhelming

3    bargaining power; (2) enforcement of the provision is "so gravely difficult and inconvenient" such that

4    the complaining party will "for all practical purposes be deprived of its day in court;" or (3)

5    enforcement of the clause would contravene a strong public policy of the forum in which the suit is

6    brought."  Argueta, 87 F.3d at 325 (citations omitted).

7              Here, Plaintiffs argue that they were induced by fraud to enter into the various agreements,

8    including the SA.  In order to prevail on their fraud in the inducement claim, Plaintiffs must show (1)

9    that Defendants made a material representation or omission; (2) that it was false; (3) that Defendants

10   knew it was false, or made recklessly, without any knowledge of its truth and as a positive assertion;

11   (4) that it was made with the intention that it should be acted upon by Plaintiffs; (5) that Plaintiffs

12   acted in reliance upon it; and (6) that Plaintiffs thereby suffered injury.  See  In re Cheryl E., 161

13   Cal.App.3d 587, 599-600 (1984).

14             Plaintiffs argue that "Defendants never intended to perform their obligations under the

15   contracts, didn't perform them beyond the initial exchange, and instead forced Plaintiffs into a

16   settlement agreement that they never intended to honor."  (Oppo. at p.11:12-14).  In conclusory

17   fashion, Plaintiffs argue:

18             With the benefit of hindsight, there can be little doubt that Mr. Gutierrez on his
             own behalf and on behalf of his companies defrauded Plaintiffs and induced them to
19           sign contracts that resulted in personally netting the Gutierrez's almost $3.5 million
             and leaving Plaintiffs with nothing. Defendants' conduct entitled Plaintiffs to rescind
20           the contracts and in so doing, the forum selection clauses relied upon by Defendants
             are invalidated, warranting a California resolution of these California torts.

21

22   (Oppo at p. 12-10).

23             The court concludes that the FAC's allegations, in combination with the evidence submitted

24   by the parties, fail to establish fraud in the inducement with respect to either the forum selection

25   provisions or the contracts as a whole.  The scope of the SA is broad, providing for the "full settlement

26   and discharge of all claims."  (FAC Exh. E, ¶B).  Mr. Piancone, an officer of Nascent, declares that

27   the parties began negotiating for the sale of Pasani and Eco Park in late 2006 or early 2007 and, after

28   nearly six months of negotiations, the parties closed on the transaction on or about May 10, 2007.

1  Pursuant to the parties' agreements, Plaintiffs provided working capital and "$500,000 on the note and

2  $2 million to One Seven for the trademark license" and Mr. Pederzini operated the businesses in

3  Mexico.  (Piancone Decl. ¶6).  The operational decisions for both Pasani and Eco Pak were made at

4  Nascent's corporate headquarters in San Diego.  The day-to-day invoicing and collection for the

5  companies were handled by Mr. Pederzini and staff, and corporate accounting was handled in San

6  Diego by processing information provided by Mr. Pederzini.  (Piancone Decl. ¶7).

7       After several months, friction developed between the parties when Mr. Pederzini "refused to

8  provide access to the underlying records, accounts and offices so that the account[ants] could complete

9  the audits of Eco Pak and Pasani."  Id.  Mr. Piancone explains that Nascent is a fully reporting public

10  corporation with the obligation to fully account for its acquisitions of Eco Pak and Pasani.  Id.  By late

11  June 2008 the parties agreed to settle their disputes by "unwinding the entire acquisition transaction

12  by paying back over time a portion of the funds to Plaintiffs in return for Mr. and Mrs. Gutierrez's

13  reacquisition of ownership of Eco Pak and Pasani." (Piancone Decl. ¶8).  Defendants, represented by

14  counsel, determined that it was in their best interests to settle all disputes.  Id.  Pursuant to the SA, the

15  Pederzinis made the requisite initial payments of $120,000 and Defendants transferred the stock in Eco

16  Pak and Pasani to the Pederzinis.  Id.  After making the initial payments, the Pederzinis have failed

17  to make any more payments as required by the Settlement Agreement.

18       In opposing the motion, Plaintiffs raise essentially two arguments.[1]  First, Plaintiffs argue that

19  the SA was offered on a take-it or lose-it basis and that "Nascent [had] no viable choice but to take

20  it."  Id.  This unequal bargaining power argument is not persuasive as Nascent is a corporate entity

21  with sophisticated corporate officers.  Moreover, it appears from the parties' submissions that

22  Plaintiffs were represented by counsel at all material times.  Consequently, Plaintiffs fail to show that

23  the SA should be set aside on account of unequal bargaining power.

24       Second, Plaintiffs broadly argue that they were fraudulently induced to enter into the SA

25  containing the forum selection provision because Mr. Piancone "do[es] not believe Defendants ever

26

27       [1] The court notes that Plaintiffs' argument of fraud in the inducement is very broad.  Plaintiffs
do not specifically argue that the forum selection provision was fraudulently incorporated into the SA.
28  Rather, Plaintiffs argue, despite the parties' course of conduct, that all the agreements were the
product of fraud.

1  intended to fully perform the acquisition transaction or the terms of the SA beyond the initial signing

2  and performance required at the time of signing the contracts." (Piancone Decl ¶10).  This burden

3  falls short of demonstrating that Plaintiffs were fraudulently induced to enter into the SA.  Neither the

4  FAC's allegations nor the evidence submitted by Plaintiffs, seen in the best light to them, see Murphy,

5  362 F.3d at 1139, makes a prima facie showing such that Plaintiffs were fraudulently induced to enter

6  into the SA.  Plaintiff must identify their claim of fraud in the inducement with particularity.

7  Fed.R.Civ.P. 9(b).  Allegations or evidence to the effect that Plaintiffs believe that the Pederzinis did

8  not intend to perform under the SA is insufficient to establish fraud in the inducement.  Plaintiffs must

9  go beyond identifying their belief that Defendants intentionally breached the SA.  Plaintiffs must

10  specifically identify the materially false and misleading statements, omissions, or conduct of

11  Defendants; scienter; reliance; and resulting injury.  See  In re Cheryl E., 161 Cal.App.3d 599-600.

12  The failure to sufficiently establish that Plaintiffs were fraudulently induced to enter into the SA is

13  fatal to their claim that the forum selection provision is not enforceable.

14      In light of the presumptive validity of the forum selection provision, Bremen, 407 U.S.12, and

15  Plaintiffs' failure to state a claim for fraud in the inducement, the court grants the motion to dismiss

16  for improper venue.  Pursuant to the parties' agreement, the only proper venue to bring Plaintiffs'

17  claims is in the courts of Mexico, Distrito Federal.  The motion for change of venue is granted.  The

18  Clerk of Court is instructed to close the file.

19      **IT IS SO ORDERED.**

20  DATED:  March 9, 2011

21

22  cc:        All parties

Hon. Jeffrey T. Miller
United States District Judge

- 7 -                                                     10cv1349